UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 12bk48031 |
| | ) | |
| DERRICK A. BOVINO, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Judge Timothy A. Barnes |
| | ) | |

TIMOTHY A. BARNES, Judge.

MEMORANDUM DECISION

This matter comes before the court on Old Plank Trail Community Bank's (the "Movant") Motion To Dismiss (the "Motion To Dismiss") [Docket No. 102] and the Movant's Motion for Relief from Stay (the "Stay Motion") [Docket No. 100]. The Movant reasons that the Debtor's case should be dismissed for a lack of good faith, alleging "cause" under section 1112(b). In addition, the Movant seeks relief from stay pursuant to section 362(d) on three real estate investment properties of Derrick A. Bovino (the "Debtor"), alleging that relief should be granted both under section 362(d)(1) "for cause" and under section 362(d)(2) as two of the properties allegedly have no equity and are not necessary for an effective reorganization.

JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under title 11 of the United States Code, or arising in or related to cases under title 11. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred may enter final judgment on any core proceeding arising under the Bankruptcy Code or arising in a case under title 11. 28 U.S.C. § 157(b)(1). A motion for relief from stay arises in a case under title 11 and is specified as a core proceeding. 28 U.S.C. § 157(b)(2)(G). *In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litig.*, 140 B.R. 969, 976-77 (N.D. Ill. 1992); *In re Quade*, 482 B.R. 217, 221 (Bankr. N.D. Ill. 2012) (Barnes, J.). It follows that a motion to dismiss under section 1112(b) also arises in a case under title 11. 28 U.S.C. § 157(b)(2)(G). *In re Iberis Int'l, Inc.*, 72 B.R. 624, 626 (Bankr. W.D. Wis. 1986).

Accordingly, final judgment is within the scope of the court's authority.

1

PROCEDURAL HISTORY

In considering the motions, the court has considered the arguments of the parties at the July 8, 2013 hearing on the motions (the "Hearing"), as well as evidence adduced at the Hearing, and has reviewed and considered the Stay Motion and the Motion To Dismiss themselves, as well as:

(1)  The Farleys' Motion To Dismiss Bankruptcy Case [Docket No. 86];

(2)  Response to Farleys' Motion To Dismiss [Docket No. 107];

(3)  Response to Old Plank Trail Community Bank's Motion for Relief from Stay [Docket No. 108];

(4)  Response to Old Plank Trail Community Bank's Motion To Dismiss [Docket No. 109];

(5)  Old Plank Trail Community Bank's Combined Reply in Support of its Motion To Lift Stay and its Section 1112 Motion To Dismiss [Docket No. 110]

(6)  The Farleys' Reply in Support of their Motion To Dismiss Bankruptcy Case and Bar Debtor from Refiling [Docket No. 112]; and

(7)  Joint Pretrial Statement [Docket No. 114].

The court has also taken into consideration any and all exhibits submitted in conjunction with the foregoing. Though these items together do not constitute an exhaustive list of the filings in the above-captioned bankruptcy case, the court has taken judicial notice of the contents of the docket in this matter. *See Levine v. Egidi*, No. 93-C-188, 1993 WL 69146 at *2 (N.D. Ill. March 8, 1993); *In re Fin. Partners*, 116 B.R. 629, 635 (Bankr. N.D. Ill. 1989) (Sonderby, J.) (stating that a bankruptcy court may take judicial notice of its own docket).

BACKGROUND

In this matter, the facts are essentially undisputed. For the purposes of determining the motions, the court therefore finds as follows:

The Debtor is the owner of three real estate investment properties, the property located at 110 Golfview, Frankfort, Illinois (the "Golfview Property") and the property located at 7324 Heritage Court, #2H, Frankfort, Illinois (the "Heritage Property") (collectively referred to as the "Will County Properties"), and the property located at 333 W. Hubbard Street, #1011, Chicago, Illinois (the "Hubbard Property"). In addition to these properties, the Debtor is presently employed at New York Life as a sales agent, generating a solely commission-based income. While the Debtor's employment income fluctuates, his net monthly employment income is approximately $3,500.

The Movant holds two mortgages, one that secures the Will County Properties and another that secures the Hubbard Property. In February of 2012, First United Bank, the previous mortgage holder, refused to accept mortgage payments after the Debtor filed his petition for relief in Chapter

2

7 of the Bankruptcy Code. From November 29, 2011 to February 14, 2013, the Debtor did not make any mortgage payments on the properties. The Debtor has failed to pay any real estate taxes on the three properties since 2008.

Subsequently, both Cook County (where the Hubbard Property is located) and Will County (where the Will County Properties are located) proceeded with tax sales to gain payment for the delinquent taxes. Sabre Investments, LLC and Interstate Funding (collectively referred to as the "Tax Purchasers") each purchased the delinquent taxes on separate properties of the Debtor. On November 16, 2010, Will County sold the delinquent 2009 real estate taxes on the Golfview Property to Sabre Investments, LLC. Sabre Investments also purchased the subsequent delinquent taxes on the Golfview Property through 2011. On November 16, 2010, Will County sold the delinquent 2009 real estate taxes on the Heritage Property to Interstate Funding. Interstate Funding also purchased the subsequent delinquent taxes on the Heritage Property through 2012. On July 22, 2011, Cook County sold the delinquent 2009 real estate taxes on the Hubbard Property to Interstate Funding. Interstate Funding also purchased the subsequent delinquent taxes on the Hubbard Property, last paying a portion of the 2012 taxes on March 18, 2013.

On February 8, 2012, the Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code. The Debtor failed to list Brian Farley, Philip Farley, Pam Farley, Shawn Farley, Motorcycle of Joliet, LLC, Indian Motorcycle of Joliet LLC, Joliet Lenox LLC, and 1443 Astor LLC (collectively referred to as the "Farleys"), as creditors in his case. The Chapter 7 Trustee determined that the clase was a no-asset case, and the Debtor received his Chapter 7 discharge on May 1, 2012.

On September 24, 2012, the Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code. Assets were available for distribution in the Chapter 13 case. On November 21, 2012, the Debtor's Chapter 13 case was dismissed for failure to file his 2011 tax return, which the Debtor alleged that was not filed because he failed to receive necessary documentation from the Farleys.

On December 6, 2012, the Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code. In the schedules submitted along with the petition, the Debtor includes his non-debtor spouse's income as a part of his current monthly income. On February 8, 2013, the Debtor's Chapter 7 case was reopened at the request of the Farleys, so that the Farleys would be given the opportunity to object to the discharge. As it currently stands, the Farleys and the Debtor have a proposed agreement to close the Chapter 7 case and give the Farleys a $10,000 unsecured claim in the Chapter 11.

Since the commencement of this Chapter 11 case, there have been issues surrounding the Debtor's monthly operating reports. The Debtor has failed to produce timely operating reports and failed to disclose accurate receipts and disbursements on the operating reports. As of June 30, 2013, the Debtor had $2,317 in his post-petition bank account (the "DIP Account").

On April 5, 2013, the Debtor filed his Chapter 11 plan, in which he failed to address directly the debt owed to the Tax Purchasers. Instead, the Debtor lists the Will County Treasurer and Cook County Treasurer as the creditors for the delinquent taxes. On May 16, 2013, the Movant filed its Stay Motion alleging as its grounds the lack of equity in the Will County Properties, the inability of the Debtor to propose a feasible plan, and the Debtor's lack of ability to pay delinquent real estate taxes before the end of the redemption periods, further explained below. That same day, the

Movant also filed its Motion To Dismiss alleging as its grounds the Debtor's abuse of the bankruptcy process and inability to propose a feasible plan.

Originally, the redemption periods on the Will County Properties were set to expire on August 5, 2013, but the Tax Purchasers extended the redemption periods to November 14, 2013, on which date the redemption period of the Debtor's delinquent taxes on the Heritage Property will expire, enabling Interstate Funding to obtain a tax deed on the property. Interstate Funding has already petitioned for a tax deed with respect to the Heritage Property. On November 15, 2013, the redemption period of the Debtor's delinquent taxes on the Golfview Property will expire. On January 22, 2014, the redemption period of the Debtor's delinquent taxes on the Hubbard Property will expire.

## DISCUSSION

The matters before the court involve two separate, but intertwined motions. First, a determination must be made as to whether the Debtor's conduct, circumstances, and relevant documentation exhibited bad faith and established cause for dismissal. Second, and only if the court determines not to dismiss, the court must decide whether the Movant has established sufficient grounds for the court to grant relief from stay. Discussed in both motions are evaluations of the Debtor's prepetition conduct (which include actions taken in the two previous bankruptcies), conduct and documentation submitted postpetition, as well as an opportunity to evaluate the Debtor's potential for future performance.

A. <u>Motion To Dismiss under Section 1112(b)</u>

Under section 1112 of the Bankruptcy Code, the bankruptcy court shall, upon the request of a party in interest, notice and hearing, and for cause, dismiss a pending Chapter 11 case. 11 U.S.C. § 1112(b). "Although section 1112(b) does not explicitly provide that lack of good faith may constitute cause, section 1129(a)(3) requires that plans be 'proposed in good faith'; thus courts have considered bad faith to be an acceptable basis for conversion or dismissal." *In re Jartran, Inc.*, 886 F.2d 859, 867 (7th Cir. 1989). Bad faith is determined "by considering the totality of the circumstances by examining both objective and subjective factors." *In re Local Union 722 Int'l Bhd. of Teamsters*, 414 B.R. 443, 447 (Bankr. N.D. Ill. 2009) (Cox, J.). The case must serve a valid reorganizational purpose, and if the case was filed only to harass and delay creditors, then there is bad faith. *In re Strug-Div., LLC*, 375 B.R. 445, 449 (Bankr. N.D. Ill. 2007) (Schmetterer, J.). If there is little prospect that a plan will be confirmed, it can constitute cause for the dismissal of a Chapter 11 case. *In re Woodbrook Associates*, 19 F.3d 312, 316 (7th Cir. 1994).

Nonetheless, "the court must be careful not to deny the protection of the Bankruptcy Code to a debtor whose legitimate efforts at financial rehabilitation may be hidden among derivative benefits (such as the delay of creditors resulting from the automatic stay) that, if viewed alone, might suggest bad faith." *Strug-Div.*, 375 B.R. at 449. Conversion or dismissal is a "drastic measure" and the movant bears the burden of proving that the relief requested is "warranted and not premature." *In re Sal Caruso Cheese, Inc.*, 107 B.R. 808, 817 (Bankr.N.D.N.Y.1989).

The initial burden to demonstrate "cause" under section 1112(b) lies with the movant, and that burden must be shown by a preponderance of the evidence. *In re Draiman*, 450 B.R. 777, 826 (Bankr. N.D. Ill. 2011) (Squires, J.). However, "[o]nce the movant shows 'cause,' the burden shifts

to the debtor to establish one of two exceptions in section 1112(b)." *Id.* Section 1112(b)(2) provides that the court may not convert or dismiss a Chapter 11 case if it is not in the best interest of the creditors, and:

> (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes ... within a reasonable period of time; and
>
> (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)—
>
>> (i) for which there exists a reasonable justification for the act or omission; and
>>
>> (ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(2). Courts have broad discretion to dismiss a Chapter 11 case for cause, *id.*, but need to also be mindful of the open access of the bankruptcy process and to allow debtors a fair opportunity to reorganize their assets. *Strug-Div.*, 375 B.R. at 449. Nothing in Section 1112(b) requires either dismissal or conversion. *In re Jartran, Inc.*, 886 F.2d 859, 868 (7th Cir. 1989).

Section 1112(b)(4) lists different actions included in the definition of "cause," but that list is not exhaustive. *In re Tekena USA, LLC*, 419 B.R. 341, 346 (Bankr. N.D. Ill. 2009) (Cox, J.). In *Tekena*, Judge Cox instead considered 14 factors that may or may not constitute cause. *Id.* The Movant argues that using the *Tekena* factors there is "cause" to dismiss. The *Tekena* factors bearing upon cause for dismissal in a Chapter 11 include:

> (1) whether debtor has few or no unsecured creditors; (2) whether there has been previous bankruptcy filing by debtor or related entity; (3) whether there has been improper prepetition conduct by debtor; (4) whether petition effectively allows debtor to evade court orders; (5) whether debtor owes few debts to non-moving creditors; (6) whether petition was filed on eve of foreclosure; (7) whether foreclosed property is sole or major asset of debtor; (8) whether debtor lacks any ongoing business or employees; (9) whether there is no possibility of reorganizing;
> (10) whether debtor's income is insufficient to allow it to operate; (11) whether petition was filed despite lack of pressure from non-moving creditors; (12) whether case essentially involves resolution of two-party dispute; (13) whether debtor is corporation that was formed and received title to its major assets immediately before petition was filed; and (14) whether petition was filed solely to create automatic stay.

*Id.*

It is certainly true that the Debtor has few unsecured creditors (the IRS, the Farleys, and the Illinois Department of Revenue). Further, the Debtor has two previous bankruptcy filings within the previous year and the Debtor's actions surrounding the previous bankruptcies could be construed as improper prepetition conduct. Nonetheless, the Debtor has provided sufficient explanations for both. It does not appear, therefore, that the Debtor's actions have reached a level to cause the court to conclude that it would be in the best interest of the creditors to dismiss this case.

On the other hand, a number of the *Tekena* factors appear to weigh in the Debtor's favor. The issue of improper prepetition conduct has not, in fact, been raised by the Movant, but the court nonetheless notes that while the Debtor has filed three bankruptcies in the past year, that in itself is not per se bad faith. The Debtor has significant debts to non-moving parties, including the IRS, the Illinois Department of Revenue, the Farleys, condo associations of the investment properties, the Tax Purchasers, and Archer Bank, which has claims on the Golfview Property and a Maserati owned by the Debtor. The Debtor's Chapter 11 petition for relief was not filed on the eve of foreclosure, as the Movant has no pending foreclosure action in state court. In fact, the commencement of this case appears driven by the actions of some of creditors other the Movant. Further, the filing does not appear to be in order to evade court orders. It appears that the Debtor did not file solely to create the automatic stay, as the Debtor appears to in fact have a valid reorganization purpose (to pay his debt over time and retain his income from the subject properties). The Debtor's employment income and the income from his ongoing business, the investment properties, appear to provide sufficient funds for a reorganization plan. Of course, these appearances need to be further developed through a confirmable plan, but are sufficient in this context as to allow the Debtor to proceed with his case.

Given all of the circumstances surrounding this case, the central question among the *Tekena* factors is whether a reorganization plan is possible. At this moment, this issue is unclear.

The use of the non-debtor spouse's income is a major contributing factor in the Debtor's proposed plan. In order to utilize a non-debtor's income to fund a plan, it must be reliable. The simplest way to demonstrate reliability is through a firm commitment from the non-debtor in the form of a contract or corroboration through testimony from that spouse under oath. Absent either, the court remains skeptical of income from a party that is not obligated to provide it. *In re Hockenberry*, 457 B.R. 646, 660 (Bankr. S.D. Ohio 2011) (holding that the debtor must show that his non-debtor spouse committed her income and has ability to contribute income over the life of the plan). The non-debtor spouse in this case has not shown any such commitment.

Of course, evidence of consistent past contribution as an indicator of future conduct may also be probative. In that regard, however, the Movant argues that the debtor has failed to demonstrate that the non-debtor spouse income has met the statutory definition of "current monthly income" in section 101(10A)(B), which provides that income from a non-debtor spouse is considered current monthly income if it is expended regularly on household expenses. 11 U.S.C. § 101. The court agrees. Here, the Debtor failed to provide evidence of how wife's income was used and thus failed to prove her income as a reliable source of plan contributions.

The Debtor is free to propose an alternative plan. While the Debtor's Chapter 11 plan was filed on the extinction of the 120 - day exclusivity period, in theory, the plan should be the Debtor's best attempt at a plan confirmation. However, the failure of this plan does not preclude other possible plans from being confirmed.[1] Conditions surrounding the Debtor's proposed plan have changed since it was originally filed. The Debtor believes that its IRS liability will decrease substantially once the proper tax documentation is processed, and there is a pending agreement to settle the dispute with the Farleys.

---

[1] Now that the Debtor's 180-day exclusive plan acceptance period has expired, other parties in interest may propose a plan. 11 U.S.C. § 1121(c)(3).

Outside of the *Tekena* factors, the Movant reasons that the Debtor's failure to list the Farleys as creditors in his Chapter 7 case displays his bad faith. But in a Chapter 7 no-asset case, failure to list unsecured creditors as creditors has no bearing on the Debtor's bad faith because not listing unsecured creditors does not affect the payout or dischargeability of the debts to unsecured creditors. *See In re Mendiola*, 99 B.R. 864, 865 (Bankr. N.D. Ill. 1989) (Barliant, J.) (holding that failure to list creditors in a Chapter 7 no-asset case has no effect on the dischargeability of debt because unlisted prepetition creditor's rights are unaltered). The Movant also argues that the Debtor's failure to list the Tax Purchasers as creditors exhibits the Debtor's bad faith. However, despite the Tax Purchasers' lack of notice of the bankruptcy, they can still be bound by the plan. *In re LaMont*, 487 B.R. 488, 497-498 (N.D. Ill. 2012). The purchasers remain adequately protected so long as they are paid in full. *Id.* If the Tax Purchasers are paid in full, their absence in the courtroom becomes much less of an issue.

The foregoing presumes that if the Tax Purchasers remain absent, it is the court's belief that notice can and should be rectified. For that reason the court, as noted in further detail, will grant relief on this issue should the Debtor fail to provide notice to tax purchaser of this proceeding.

The Debtor's Chapter 11 filing does appear to serve a valid reorganization purpose, to become solvent while maintaining his interest in the three investment properties. Whether or not that purpose can be achieved through a Chapter 11 plan remains to be seen. Both pre- and postpetition conduct of the Debtor is troubling, but a large number of the *Tekena* factors weight in the Debtor's favor. Therefore, the court does not find sufficient grounds to dismiss the case for bad faith.

B. <u>Motion for Relief from Stay</u>

On multiple grounds, the Movant is seeking relief from the stay as to all three of the Debtor's investment properties. Section 362(d) allows the court to grant relief from the stay:

> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if—
>
>> (A) the debtor does not have an equity in such property; and
>>
>> (B) such property is not necessary to an effective reorganization;

11 U.S.C. § 362.

The Movant contends that grounds exist for granting the motion for all properties "for cause" under section 362(d)(1) and in the alternative, circumstances exist with the Will County Properties which would allow the court to grant relief under a section 362(d)(2) analysis.

Section 362(g)(1) explains that as the party requesting relief from stay, the Movant bears the burden on the issue of the Debtor's equity in the Property. 11 U.S.C. § 362(g)(1); *see also Fed. Nat'l*

7

*Mortg. Ass'n v. Dacon Bolingbrook Assocs. Ltd. P'ship*, 153 B.R. 204, 208 (N.D. Ill. 1993); *In re Standfield*, 152 B.R. 528, 534 (Bankr. N.D. Ill. 1993) (Squires, J.). The Debtor, as the party opposing such relief, has the burden of proof on all other issues. 11 U.S.C. § 362(g)(2); *see also Fed. Nat'l Mortg.*, 153 B.R. at 208; *Standfield*, 152 B.R. at 534.

The court will examine each basis for relief in turn.

1. "For Cause" Grounds for Lifting the Stay

A decision to modify or lift the automatic stay is left to the sound discretion of the bankruptcy court. *In re C & S Grain Co.*, 47 F.3d 233, 238 (7th Cir. 1995). There is no strict definition of the term "cause" as used in section 362(d)(1). *In re Betzold*, 316 B.R. 906, 915 (Bankr. N.D. Ill. 2004) (Schwartz, J.) (*citing In re Fernstrom Storage and Van Co.*, 938 F.2d 731, 735 (7th Cir. 1991)). The determination whether cause exists to lift the stay is a fact-intensive inquiry made on a case-by-case basis. *Id.* Each case must be viewed on the basis of its own particular facts, and there must be a balancing of the interest of the debtor with the interest of the secured creditor in its collateral. *In re Nat'l Real Estate Ltd. P'ship II*, 87 B.R. 986, 990 (Bankr. E.D. Wis. 1988). While postpetition and postconfirmation conduct can constitute "for cause" grounds for lifting the stay, pre-petition conduct alone is normally not sufficient. *In re Morrow*, No. 12-B-26246, 2013 WL 3270762 (Bankr. N.D. Ill. June 27, 2013) (Barnes, J.).

"Factors generally looked to in determining whether to modify the stay for cause include interference with the bankruptcy, good or bad faith of the debtor, injury to the debtor and other creditors if the stay is modified, injury to the movant if the stay is not modified, and the proportionality of the harms from modifying or continuing the stay." *Milne v. Johnson (In re Milne)*, 185 B.R. 280, 283 (N.D. Ill. 1995). None of these factors alone is outcome determinative. The factors in the present case must be weighed within the context of all the relevant circumstances. *In re Comdisco, Inc.*, 271 B.R. 273, 276 (Bankr. N.D. Ill. 2002) (Barliant, J.). Courts must weigh the costs and benefits of maintaining the stay. *Id.*

The express "cause" for relief from stay under section 362 is a lack of adequate protection. 11 U.S.C. § 362(d)(1). Adequate protection, as defined in the Bankruptcy Code, was intended by Congress to prevent, during the pendency of a bankruptcy case, against a loss in the value of a secured creditor's interest in property of the bankruptcy estate. *United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365 (1988).

Here, the Movant first claims it is inadequately protected because of the increasing interest of the Tax Purchasers in the properties in the current bankruptcy. With the expiration of the tax redemption periods fast approaching, a determination of the Tax Purchasers' rights and how they affect the bankruptcy is in order. As it currently stands, a tax deed petition has already been filed with regard to one of the properties.

The Movant argues that the Debtor's conduct surrounding not only this bankruptcy, but also previous ones, shows "cause" and leaves the bank inadequately protected.

The court will examine each of these arguments in succession.

8

a. *The Pending Redemption of the Debtor's Property Taxes*

The Movant argues that it will be inadequately protected should the Debtor fail to pay delinquent taxes before the expiration of the redemption period. Based upon the Debtor's finances, it is abundantly clear that he has no ability to do so. With that in mind, the Debtor seeks to spread payment of his tax delinquencies over a 5-year period, years after the Debtor's right of redemption is set to expire.

In order to deal with this issue the court must address two questions: (1) What are the rights of the tax purchaser in the Debtor's bankruptcy?; and (2) In a Chapter 11, can the Debtor modify those rights?

To determine what rights of the Tax Purchasers the Debtor is seeking to modify, a brief summary of the Illinois tax sale process is in order. If a property owner fails to pay taxes, the county automatically obtains a lien on the property on January 1 of the year immediately following the year in which the taxes are due. With the exception of some federal obligations, that lien has priority over all other liens. 35 ILCS 200/21-75. The county then has the choice to recover the taxes through different types of tax sales. When the taxes are sold, the tax purchaser obtains a lien, the county's lien is terminated, and a statutory redemption period is created. This period allows the Debtor, a mortgagee holder, or another party in interest to redeem the taxes by paying the delinquent amount plus any compounded interest. This redemption period is a minimum of two years and can be extended at the option of the tax purchaser for up to a maximum of three years. 35 ILCS 200/21-350.

Once the tax redemption period expires, the purchaser does not automatically obtain a tax deed on the property. Within 3-6 months prior to the expiration of the redemption period, the purchaser must petition the state court and send notice of the petition to the Debtor. 35 ILCS 200/22-30. When obtained and recorded, a tax deed eliminates other security interests because the title to the property will be passed on to a tax purchaser "free and clear of all previous title and claims of every kind and character." *In re McKeever*, 132 B.R. 996, 1007 (Bankr. N.D. Ill. 1991) (Katz, J.).

To this court's knowledge, spreading delinquent real estate tax payments past the redemption period has not been dealt with in the context of Chapter 11. In Chapter 13 cases, there exists a split of authority. One line of cases stands for the proposition that a debtor must pay the full amount owed on the delinquent taxes prior to the expiration of the redemption period. Nevertheless, recent cases have held that a debtor is allowed to spread the payments over the life of their Chapter 13 plan. It is the latter line of cases that the court finds persuasive.

In those cases, courts have held that debtors may modify the rights of tax purchasers by allowing for the spreading of delinquent real estate taxes over the life of the plan, so long as the redemption period has not expired prior to the filing of the petition date. *See In re McKinney*, 341 B.R. 892 (Bankr. C.D. Ill. 2006), *aff'd sub nom. Salta Grp., Inc. v. McKinney*, 380 B.R. 515 (C.D. Ill. 2008); *In re LaMont*, 487 B.R. 488 (N.D. Ill. 2012); *In re Romious*, 487 B.R. 883, 886 (Bankr. N.D. Ill. 2013) (Baer, J.). *See also In re Kasco*, 378 B.R. 207, 214 (Bankr. N.D. Ill. 2007) (Hollis, J.) (*citing Bates*, 270 B.R. at 467) ("[a]s long as the redemption period has not expired prior to the bankruptcy filing,

9

there is a claim that can be treated during the bankruptcy case ... [through] plan treatment in Chapter 13—even though the redemption period expires during the pendency of the case.").

In this matter, each Tax Purchaser currently holds a lien on the respective properties, which can treated as a secured claim on the property. Under the preceding cases, such rights amount to a "claim" in the bankruptcy case. *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991) (Under section 101(5), the Bankruptcy Code employs the "broadest available definition" of a claim). The tax purchaser has claim in the form of a "right to payment," pursuant to possible loss of property if a tax deed is issued. *Bates*, 270 B.R. at 463.

The Movant would have the court believe that this same right of modification should not apply in Chapter 11. The Movant references Judge Baer's ruling from *In re Romious*, for guidance in this matter. The Movant's Stay Motion contends that Judge Baer allowed for the spreading of delinquent taxes over the life of the plan, in most part to preserve the important policy of Chapter 13, to allow debtors to preserve their property right in their primary residence. 487 B.R. 883, 886 (Bankr. N.D. Ill. 2013) (Baer, J.) ("Debtors are not restricted by Section 108(b), which 'must be read in light of and in comparison with the [. . .] predominant policy of Chapter 13 to afford debtors the opportunity to save their residential real estate.'") (citations omitted).[2]

It is this court's opinion that Judge Baer's decision was made pursuant to the fact that debtors can use "their Chapter 13 plan to pay a secured claim over time, as they are entitled to do because section 1322(b)(2) provides Chapter 13 debtors the right to modify claims." *Romious*, 487 B.R. at 886. Section 1322(b)(2)'s analog, section 1123(b)(5), allows a debtor to modify the rights of holders of secured claims. *In re Arns*, 372 B.R. 876, 881 (Bankr. N.D. Ill. 2007) (Squires, J.). There is no principled reason to read virtually identical language differently simply because it is applied in different bankruptcy chapters. *Ryan v. U.S.A. (In re Ryan)*, No. 12-3398, 2013 WL 3380131 at *4 (7th Cir. July 8, 2013). The Debtor is seeking to modify the secured claim of the Tax Purchasers by paying them over the life of the plan as opposed to prior to the redemption period. Section 1123(b)(5) affords the Debtor that right.

A second aspect of this dispute involves the relationship between sections 1123 and 108(b) of the Bankruptcy Code. Section 108(b) permits an extension of time so that a debtor, "may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act," so long as the deadline to do so did not expire prepetition. 11 U.S.C. § 108(b).

The determinative clause in Section 108(b) provides that the statute applies to an agreement made by, "the debtor or an individual protected under section 1201 or 1301 of this title." 11 U.S.C. § 108(b). The Movant believes this language reads in such a way that it only applies in Chapters 12 and 13. This is simply not the correct reading of the statute. This provision applies to all debtors, in addition to individuals protected under section 1201 or 1301, not simply just to individuals or debtors in a Chapter 12 or 13. Sections 1201 and 1301 are meant to cover co-debtors, not original debtors. Thus, section 108(b) applies to Chapter 11 debtors, and as the Seventh Circuit has made clear, section 108 should only be applied to expand debtors' rights. *Moody v. Amoco Oil Co.*, 734 F.2d

---

[2] The court is not certain, especially in the light of the BAPCPA amendments in 2005, that any such "predominant policy" remains a part of Chapter 13, even had such existed before. A Chapter 13 debtor's ability to retain its home is severely limited, and in some instances is less powerful than the debtor's rights as to his/her investment properties.

1200, 1216 (7th Cir. 1984) ("[T]he purpose behind section 108(b) is to permit the debtor an extension of time for doing certain acts necessary to preserve his rights. It would be anomalous to apply it to restrict debtors' rights.").

Because Section 1123(b)(5) allows a debtor the right to modify a tax purchaser's secured claim and section 108(b), which applies to all debtors, does not restrict that right, a debtor should be allowed to spread payment of delinquent taxes over time in a Chapter 11 plan. If the Debtor's confirmed plan redeems the delinquent taxes through the plan by paying the Tax Purchasers in full, the mortgagee's security interest will remain unaffected. So long as the Debtor obtains plan confirmation prior to the end of the redemption period and the confirmation process involves due process to the Tax Purchasers, the Movant is adequately protected in this respect.

    b.  Debtor's Prepetition Conduct

Spreading the tax payments is most certainly not the only issue in determining "cause" and whether the bank is adequately protected. As explained in a recent decision of this court, prepetition conduct alone does not ordinarily justify granting relief from stay. *Morrow*, 2013 WL 3270762 at *5. Despite this, prepetition conduct may be used as a predictor of future conduct.

The Debtor's conduct prepetition certainly leaves something to be desired. The Debtor has failed to pay his real estate taxes since 2008, which has led to the previously explained tax purchaser situation. The Debtor had his previous Chapter 13 case dismissed for failing to file his 2011 tax return (though the Debtor has attributed that failure to the actions of third parties). As has been noted, the Debtor has commenced three bankruptcy cases in relatively short succession.

While the Debtor's prepetition conduct is less than exemplary, in this instance, the Debtor's post-petition conduct is what is outcome-determinative in regard to the Stay Motion.

    c.  Debtor's Postpetition Conduct

When an individual debtor-in-possession attempts to reorganize in a Chapter 11, a court can gain a very clear picture, through postconfirmation disclosure, of how efficiently that debtor manages its affairs. The Debtor's May operating report has yet to be filed (but the June operating report has been filed), and his January through March reports were only filed after the Movant filed a motion to dismiss with the court. What has been filed is incomplete. At the Hearing, the Debtor admitted to not including all income in his operating reports because he believed that only income and expenses traveling in and out of the DIP Account needed to be disclosed.

Here, based upon monthly operating reports, the Debtor's DIP Account appears to suffer by a degree of mismanagement. The Debtor's most recent operating report shows a balance of $2,317 in the DIP Account. That positive balance does not tell the whole story, however. On April 17, 2013, the Debtor received a security deposit of $3,000 from his new tenant in the Heritage property which was apparently deposited into the DIP Account. In addition, some income in the June operating report includes substantial one-time payments deposited into the DIP Account, which the Debtor is not likely to receive again. This includes a $1,170 refund check from the Bankruptcy Court from the dismissal of his Chapter 13 and a $1,484 check from the Attorney General due to a class action suit surrounding the foreclosure of the Debtor's previous residence. Taking these circumstances into account, the Debtor's financial management appears less than

11

satisfactory. The Debtor's positive account balance in such a small amount belies therefore operational losses, and the potential that the Debtor has mishandled a tenant's damage deposit.

While the Debtor's apparent mismanagement of finances is certainly regrettable, it does not necessarily equate to a lack of adequate protection. The Movant must demonstrate that there is a decline in the value of the collateral securing the debt. *In re Bivens*, 317 B.R. 755, 770 (Bankr. N.D. Ill. 2004) (Squires, J.). In that regard, there is a significant amount of equity with respect to the Hubbard Property and no evidence was adduced that the secured value of the Movant's claim has declined. There is no equity with respect to the Will County Properties, and similarly, no evidence was adduced that the Movant's claim in this regard has diminished postpetition. Further, the Debtor received several orders permitting the use of cash collateral, which required the Debtor to make adequate protection payments to the Movant. The most recent order requires the Debtor to make an adequate protection in the amount of $1,784. Based upon the operating reports provided, the Debtor has been making those payments.

The Movant instead reasons that the large interest rate attached to the delinquent taxes has the effect of diminishing their equity daily. Over time, yes, the value of their secured claim will diminish. However, no evidence— only argument— was offered that the secured portion of its claim is in danger of decreasing because of the superior tax liens.

As noted above, when deciding whether or not to modify the stay for "cause," a court must balance the costs and benefits of maintaining the stay. *Comdisco*, 271 B.R. at 276. Here, if the stay were to be lifted, the Debtor would certainly lose his investment properties, which are his primary assets and source of income. As of this moment, Movant has not demonstrated that harm is presently being done to its secured claim, let alone sufficient harm though as to warrant such a deprivation to Debtor.

Circumstances will, of course, change if a tax deed were to issue. If obtained and recorded, the tax deeds will extinguish the Movant's mortgage interests. Failure to obtain plan confirmation by the November redemption dates will result in the inability of the Movant or another interested party to redeem the taxes. If the taxes are not redeemed (by the Movant, or by the Debtor through a confirmed plan), the probability of a tax deed issuance increases greatly. But until such increased likelihood occurs, the Movant has failed to meet its burden to necessitate lifting of the stay based upon "cause" and a lack of adequate protection under section 362(d)(1).

2. Lack of Equity and Necessary to an Effective Reorganization

For a court to grant relief from stay under section 362(d)(2), the Debtor must have no equity in the property and the property in question must not be necessary to an effective reorganization. 11 U.S.C. § 362.

Each of the parties have stipulated to the present fair market value of the properties, which leads the court to the question of equity. The parties agree that there is equity in the Hubbard Property and a lack of equity in the Heritage Property. While the Debtor did not concede a lack of equity in the Golfview Property, he failed to provide evidence to rebut the Movant's showing of deficient equity. Thus, with respect to the Will County Properties, the court must only find that such properties are not necessary to an effective organization to show sufficient grounds for relief from stay.

"Necessary to an effective reorganization" under section 362(d)(2) requires that the property in question must be essential for reorganization in that there must be "a reasonable possibility of a successful reorganization within a reasonable time." *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 375-76 (1988). In a Chapter 11, this requires a showing that reorganization is impossible without the property and an inquiry by the court as to whether the Debtor can propose a feasible plan within a reasonable timeframe.

Early on in a bankruptcy case, a debtor may be given a greater benefit of the doubt as to the success of a proposed feasible plan. *In re Cadwell's Corners P'ship*, 174 B.R. 744, 759 (Bankr. N.D. Ill. 1994) (Katz, J.); *see also Morrow*, 2013 WL 3270762 at *5 (explaining that the filing of a bankruptcy case gives debtor's a "breathing spell," which allows a debtor time to attempt a reorganization plan). In analyzing a proposed plan, the court is tasked with determining the objective likelihood that each provision of the plan can be performed. *In re Olde Prairie Block Owner, LLC*, 467 B.R. 165, 169-70 (Bankr. N.D. Ill. 2012) (Schmetterer, J.). There must be a reasonable possibility of success. *Id.* The court must decipher not whether one specific plan is feasible, but whether any possible plan is feasible. *In re Park Ave. Partners Ltd. P'ship*, 95 B.R. 605, 613 (Bankr. E.D. Wis. 1988). When effective reorganization is impossible, the purpose of Chapter 11 and the automatic stay cannot be fulfilled. *Id.*

The burden is on the Debtor to propose a feasible plan. *In re Mayslake Vill.-Plainfield Campus, Inc.*, 441 B.R. 309, 317 (Bankr. N.D. Ill. 2010) (Squires, J.) (explaining that the plan proponent must provide for a reasonable assurance of viability). The burden is also on the Debtor to show that he will and can make all future plan payments with a high degree of certainty. *In re Draiman*, 450 B.R. 777, 823 (Bankr. N.D. Ill. 2011) (Squires, J.).

While the Debtor's present plan appears to lack feasibility (given, in part, the Debtor's reliance on the non-debtor spouse's income), as discussed above, this does not preclude other plans.

With the expiration of the redemption periods looming in November, the Debtor must act quickly to obtain plan confirmation. While it is the court's determination that there are currently insufficient grounds to warrant relief from stay under section 362(d)(2), failure to obtain plan confirmation prior to the expiration of the November redemption periods will change that stance.

The court recognizes that this then makes Movant's rights subject to developments outside its control. While, to a certain extent, that makes Movant no different than any other potential, future relief from stay movant, given the evidence of mismanagement thus far, the court is willing to fashion an intermediate, equitable remedy. *See Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988) (explaining that bankruptcy courts can use equitable powers within the confines of the Bankruptcy Code).

For now, the stay will remain in effect. Nonetheless, the court concludes that sufficient grounds for lifting the stay under both section 362(d)(1) and (d)(2) will arise if the Debtor does not obtain plan confirmation sufficiently in advance of the expiration of the redemption periods for Movant to act on its own to redeem the taxes should the stay be lifted. Based on argument at the Hearing, it appears that four weeks is sufficient time for Movant to so act. Therefore, the court concludes and will order that the stay will automatically lift on October 18, 2013 should the Debtor fail to confirm a plan that proposes to pay all delinquent taxes in full. This date will give the Debtor

an opportunity to propose, ballot, and confirm a reorganization plan while providing the Movant sufficient time to act before the redemption periods expire should the Debtor fail to confirm a plan.

## CONCLUSION

For all of the foregoing reasons, the court concludes that, in the limited respect discussed herein, the Motion To Dismiss is not well taken, and the Stay Motion is granted in part and denied in part. Separate orders will be issued, concurrent with this Memorandum Decision.

Dated: July 26, 2013

_____
Hon. Timothy A. Barnes
United States Bankruptcy Judge